UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 10 CR 50088-2 |
| | ) | Judge Iain D. Johnston |
| Hector Hernandez, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Hector Hernandez has filed a motion under the First Step Act seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his risk of complications from COVID-19. For the reasons that follow, Mr. Hernandez's motion [157] and [168] is denied.

## BACKGROUND

Mr. Hernandez pleaded guilty to three counts of possession with the intent to distribute, and conspiracy to possess with the intent to distribute, cocaine, *see* 21 U.S.C. §§ 841(a)(1), 846. Dkt. 65. At sentencing, United States District Judge Kapala, who has since taken inactive senior status, calculated his drug quantity to be more than 150 kilograms cocaine, his sentencing range to be 210 to 262 months, and imposed a sentence of 210 months. Dkt. 129 at 11, 14, 23. Mr. Hernandez appealed, but the Seventh Circuit affirmed his conviction and sentence. *See United States v. Hernandez*, 731 F.3d 666 (7th Cir. 2013). After retroactive changes to the U.S. Sentencing Guidelines that reduced base offense levels for drug offenses like Mr. Hernandez's, he and the government jointly moved to reduce his sentence under 18 U.S.C. § 3582(c)(2). Dkt. 154. Judge Kapala granted the motion and reduced Mr. Hernandez's sentence to 168 months, the bottom of his new Guidelines range. Dkt. 155. Mr. Hernandez's projected release date is November 20, 2022. *See* https://www.bop.gov/inmateloc/ (last visited November 10, 2021).

Mr. Hernandez now seeks compassionate release under the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A)(i). He contends that he is at greater risk of developing serious complications should he contract COVID-19 again, an extraordinary and compelling reason he contends warrants a compassionate release.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons or by the defendant himself. 18 U.S.C. § 3582(c)(1)(A). A court's consideration of a motion for compassionate release consists of two steps. First, a court determines whether a defendant has identified an "extraordinary and compelling" reason warranting a sentence reduction. *United States v. Thacker*, 4 F.4th 569, 576

(7th Cir. 2021). If a defendant identifies an extraordinary and compelling reason, a court then proceeds to step two and considers the sentencing factors set out at 18 U.S.C. § 3553(a) while deciding whether, in an exercise of its discretion, to grant or deny a sentencing reduction. *Id*. The defendant bears the burden of establishing that he or she is entitled to compassionate release under the First Step Act. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020). Before filing such a motion, a defendant must first ask his warden to seek a reduction on his behalf and either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A). It is undisputed that Mr. Hernandez exhausted his administrative remedies before filing his motion under the First Step Act. *See* Response [75] at 9.

The Court prefaces its analysis of Mr. Hernandez's arguments with the recognition that it, as well as the rest of the world, is still learning about the virus and therefore, is making its best judgments based upon the information that is currently available. *See, e.g., Cassell, et al., v. Snyders*, 990 F.3d 539, 549 (7th Cir. 2021) ("Governments and citizens have thus been forced to act with imperfect knowledge."). According to Mr. Hernandez's motion, his only characteristic that puts him at increased risk of severe illness from the virus that causes COVID-19 is his age, which at the time was 49 – according to the Bureau of Prisons' website he is now 50. *See* Motion [157] at 7; https://www.bop.gov/inmateloc/ (last visited November 10, 2021). Mr. Hernandez contends that his age puts him "in the highest category for complications and death from the disease." Motion [157] at 5. According to the Centers for Disease Control, although the risk of severe illness from COVID-19 begins to increase for people in their 50s, the group of people more likely to get very sick from COVID-19 is older adults aged 65 or older.[1] Mr. Hernandez falls outside that group.

In a supplemental memorandum, his counsel states Mr. Hernandez's hypertension also puts him at risk of severe illness. *See* Suppl. Motion [168] at 7. But Mr. Hernandez never cites to medical records that he suffers from hypertension, and his *pro se* motion merely mentions hypertension without explicitly stating that he suffers from it. *See* Motion [157] at 3 ("The growing coronavirus pandemic, which public health experts and policymakers recognize is especially dangerous in the confines of correctional institutions, in combination with Hypertension and other ailments is an extraordinary and compelling circumstance."). His medical records include his blood pressure reading on various dates. Some readings are elevated or worse[2], while others are not elevated. *See* Dkt. 176 at 14, 16, 18, 19. But nothing in the record explains whether this variety of readings supports a diagnosis of hypertension. Elsewhere in his motion he mentions that older adults with serious heart conditions are also at increased risk of severe illness, but again never contends that he has a serious heart condition, *see* Motion [157] at 5, and no medical records report one. Without a diagnosis of hypertension or a serious heart condition, the Court is without a basis to conclude that either places Mr. Hernandez at an increased risk of severe illness from the virus that causes COVID-19.

---

[1] *See* https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited November 10, 2021).
[2] An elevated blood pressure reading is 120 to 129 systolic and a diastolic pressure not above 80. Higher readings are considered Stage 1 or Stage 2 hypertension. *See* https://www.mayoclinic.org/diseases-conditions/prehypertension/diagnosis-treatment/drc-20376708 (last visited November 10, 2021)

Mr. Hernandez has already recovered from a COVID-19 infection once, and contends that he has "a unique susceptibility to contract the fatal disease again." Motion [157] at 4. But he does not describe being severely ill during his previous infection, and does not explain what makes him uniquely susceptible to contracting it a second time. In addition, after he filed his motion, on June 24, 2021, Mr. Hernandez received a dose of the Johnson & Johnson vaccine, and so is fully-vaccinated against COVID-19. Dkt. 176 at 20. "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

The Court may also consider the state of the pandemic and an institution's efforts to contain it. *See United States v. Young*, 834 Fed. Appx. 268, 269-70 (7th Cir. 2021). Mr. Hernandez is currently housed at FCI La Tuna, which reports that five inmates and 7 staff members are currently infected with COVID-19. FCI La Tuna reports that it houses 828 inmates, and therefore appears to have limited the spread of the virus among the inmate population. *See* https://www.bop.gov/coronavirus/index.jsp (last visited November 10, 2021).

Because Mr. Hernandez has not established that he suffers from an underlying condition that puts him at greater risk of complications from COVID-19, he is fully-vaccinated, and data indicates that his facility has limited the spread of the virus, he has not identified an extraordinary and compelling reason warranting a sentence reduction.

But even if he had and proceeded to step two of the compassionate release analysis, the Court would, in an exercise of its discretion, decide against awarding a reduction. Mr. Hernandez contends that the Court should grant a reduction because his incarceration has been more brutal than for most other prisoners because he is subject to an ICE detainer and will likely be deported when released; as a result, he has been unable to participate in rehabilitative programming that would otherwise reduce his sentence. *See* Motion [157] at 3. Other courts have deemed the harshness of prison life during a pandemic to be a relevant consideration for a motion for compassionate release. *See, e.g., United States v. Crumble*, No. 16 CR 102, 2021 U.S. Dist. LEXIS 97626, at *15-16 (E.D. Wisc. May 24, 2021). But Mr. Hernandez's ineligibility to earn an earlier release has nothing to do with the COVID-19 pandemic—he would have been ineligible even without a pandemic.

The Court's review of the sentencing factors set out in 18 U.S.C. § 3553(a) also do not favor any reduction to Mr. Hernandez's sentence. Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are the following:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from future crimes by the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2).  To those ends, the court must consider the following factors:

>  (1)     the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> . . .
>
>  (3)     the kinds of sentence available;
>  (4)     the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
>  (5)     any pertinent policy statement [in the Sentencing Guidelines];
>  (6)     the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>  (7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

      As Judge Kapala recognized at sentencing, Mr. Hernandez's offense was very serious.  It involved large quantities of cocaine, and the defendant's intent to financially profit from the addictions of others and to spread the scourge of drugs within the Rockford community.  Dkt. 129 at 16.  The defendant contends that his offense was not violent, and his criminal history was based upon mere traffic violations and this was his first felony, and that now that he is 50 his risk of recidivism has dropped.  *See* Suppl. Motion [168] at 11-12.  But these are all factors that existed at the time of his original sentencing—Judge Kapala knew the circumstances of his offense, did not apply any enhancements for firearms, and knew the defendant's age and the amount of time Mr. Hernandez would remain incarcerated.  The Court notes that Mr. Hernandez has not been the subject of any disciplinary actions while incarcerated, and commends him on his good behavior.  It further notes that because his ability to participate in programming has been limited as a result of his ICE detainer, he has had a limited ability to demonstrate efforts to rehabilitate himself.  The Court also notes other information the defendant offered at sentencing, including that his family is supportive, he has a drug problem for which he was willing to accept treatment, and his work history.  Dkt. 129 at 17.

      But the Court must balance these favorable factors against other less favorable factors, including the seriousness of his offense, the poor character Mr. Hernandez demonstrated by being involved in the offense, the failure of his earlier criminal conduct to deter him from the instant conduct, and the continuing negative impact on the community of the drug trade in which Mr. Hernandez participated.  The Court also recognizes the need to deter others from becoming involved in similar criminal enterprises.  In an exercise of its discretion, the Court believes that Mr. Hernandez's current sentence of 168 months, the bottom of his sentencing range, remains the sentence that is sufficient, but not greater than necessary, to account for all of the relevant sentencing considerations of § 3553(a).  As a result, even if he had identified an extraordinary and compelling reason for a sentence reduction, the Court would be disinclined to grant one after considering the § 3553(a) sentencing factors.

## CONCLUSION

For the reasons given, Mr. Hernandez's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) [157] and [168] is denied.

Date: November 10, 2021          By: _____
                                       Iain D. Johnston
                                       United States District Judge